**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
The Livery Round Table, Inc., Black Car Assistance Corporation, The New York Black Car Operators Injury Compensation Fund, Limo Association of New York, Inc., Livery Base Owners, Inc., Fast Operating Corp. d/b/a Carmel Car & Limousine Service, and Reuven Blecher,

                          Plaintiffs,

         - against -

New York City Taxi and Limousine Commission; Meera Joshi (in her official capacity as Chair and Chief Executive Officer of the TLC); and The City of New York,

                          Defendants.

-------------------------------------------------------------------X

**Case No.: 1:18-cv-02349-JGK-GWG**

---

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR REQUEST FOR AN ORDER GRANTING A PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65

---

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490 (Telephone)
(212) 483-9129 (Facsimile)

*Of Counsel:*
    Richard S. Mills, Esq.
    Steven J. Shanker, Esq.
On the Brief:
    Ronald Riccio, Esq.
    Dennis O'Neil Cowling, Esq.
    Matthew Caminiti, Esq.

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................1

POINT I

The *Per Se* Violation of Plaintiffs' Constitutional
Rights, Privileges, and Immunities ...................................................3

    A.    Defendants' Supremacy Clause Argument Is
Erroneous.  Plaintiffs Have Alleged the
"Something More": Preemption under Title III,
and a *Per Se* Constitutional Injury**.** .....................................7

    B.    Examples of Plaintiffs' Irreparable Injuries.........................9

    C.    Balancing of the Equities Favors Plaintiffs ....................... 12

POINT II

Enforcement of Plaintiffs' Other Federal Constitutional
Claims under §1983....................................................................... 13

    A.    Plaintiffs' Dormant Commerce Clause Claim ................... 13

    B.    Plaintiffs' Equal Protection Claim ..................................... 15

POINT III

Plaintiffs' Rights under Federalism and
Separation-of-Powers Have Been Adequately Pleaded ............... 16

    A.    Plaintiffs' State Law Claims Are Likely To Succeed......... 18

    B.    Unconstitutionality of Defendants' New Rule Regime...... 19

    C.    Defendants Fail the *Boreali* Coalescing Circumstances..... 20

CONCLUSION ............................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>C</u><span>ONSTITUTION</span>

U.S. C<span>ONST</span>. art. I, § 8, C<span>L</span>. 3.
  ("Commerce Clause (dormant)")................................... 4 n.4, 5, 7, 9 n.7, 13, 15

U.S. C<span>ONST</span>. art. VI, cl. 2.
  ("Supremacy Clause") ................................................4 n.4, 6-9 & n.7, 16-17, 21

U.S. C<span>ONST</span>. amend. XIV, § 1.
  ("Equal Protection") .............................................................4 n.4, 5, 7, 9 n.7, 15

<u>C</u><span>ASES</span>

<u>American Petroleum Inst. v. Jorling,</u>
  710 F.Supp. 421 (N.D.N.Y. 1989)...................................................................... 8-9

<u>AT & T Commc'ns of the Sw., Inc. v. City of Austin, Tex.,</u>
  975 F. Supp. 928 (W.D. Tex. 1997), *vacated as moot*
  235 F.3d 241 (5th Cir. 2000) ................................................................. 17 & n.11

<u>Bond v. United States,</u>
  564 U.S. 211 (2011)............................................................................ 5 & n.5, 6-7

<u>Boreali v. Axelrod,</u>
  71 N.Y.2d 1 (1987) .................................................................... 20 & n.13, 21-23

<u>C.D.S. Inc. v. Bradley Zetler, CDS, LLC,</u>
  691 Fed.Appx. 33 (2d Cir. 2017).........................................................................11

<u>Coastal Distribution, LLC v. Town of Babylon,</u>
  216 Fed.Appx. 97 (2d Cir. 2007).........................................................................11

<u>Dennis v. Higgins,</u>
  498 U.S. 439 (1991)................................................................................... 7-8, 14

<u>EEOC v. Local 638, et al.,</u>
  1995 WL 355589 (S.D.N.Y June 7, 1995) ........................................... 10-11 n.8

<u>Golden State Transit Corp. v. Los Angeles,</u>
  493 U.S. 103 (1989)...............................................................................................14

Hillsborough County v. Automated Lab., Inc.,
    471 U.S. 707 (1985)................................................................................. 16-17

LaForest v. Former Clean Air Holding Co.,
    376 F.3d 48 (2d Cir. 2004) ...................................................................11

Matter of NYC C.L.A.S.H. v. N.Y. Office of Parks,
    27 N.Y.3d 174 (2016) ...........................................................................21

Morales v. Trans World Airlines, Inc.,
    504 U.S. 374 (1992)..............................................................................11

New York State Restaurant Ass'n v. New York City Board of Health,
    545 F.Supp.2d 363 (S.D.N.Y. 2008) ........................................4 n.3, 8

Reyes v. McDonald's Corp.,
    2006 WL 3253579 (N.D.Ill. Nov. 8, 2006) ....................................4 n.3

Richmond Boro Gun Club, Inc. v. City of New York,
    97 F.3d 681 (2d Cir. 1996) ............................................................ 17-18

Shaw v. Delta Air Lines, Inc.,
    463 U.S. 85 (1983)......................................................................... 16-17

Tucker Anthony Realty Corp. v. Schlesinger,
    888 F.2d 969 (2d Cir. 1989) ......................................................... 10-11

Vaquería Tres Monjitas, Inc. v. Irizarry,
    587 F.3d 464 (1st Cir. 2009).................................................. 10, 15-16

Western Air Lines v. Port Authority of N.Y. and N J.,
    817 F.2d 222 (2d Cir.1987), *cert. denied,* 485 U.S. 1006 (1988) ......................17

## STATUTES

18 U.S.C. § 229, Chemical Weapons Convention Implementation Act .............5 n.5

28 U.S.C. § 1367.................................................................................................17

42 U.S.C. § 1983.................................................................5, 7-8, 9 n.7, 13-15, 17

42 U.S.C. § 1988.................................................................................................13

Americans with Disabilities Act of 1990, Pub. L. 101-336, 42 U.S.C.
§ 12101, *et seq.*, 104 Stat. 327

42 U.S.C. § 12101 ...................................................................................3

42 U.S.C., "Title II" ............................................................................. 3-4

42 U.S.C. § 12184(b)(3) ("Title III") ...................................................*passim*

42 U.S.C. § 12201 ("Title IV") .............................................................3

## REGULATIONS

49 C.F.R. § 37.23 .............................................................................4 n.3

49 C.F.R. § 37.29 .............................................................................*passim*

## OTHER AUTHORITIES

3 N.Y. Prac. Com. Litig. In New York State Courts
§ 18:9 (4th ed. 2005) ....................................................................18

2 N.Y. Jur. 2d Administrative Law § 72................................. 6 n.6, 16 n.10, 19 n.12

2 Rotunda & Nowak, *Treatise on Constitutional Law*
§ 17.8 (2d ed. 1992) .......................................................................18

## PRELIMINARY STATEMENT

Currently before this Court is Plaintiffs' motion for a preliminary injunction to maintain the *status quo ante* while the parties litigate their dispute to determine whether TLC Rule 59 has been preempted, is unconstitutional or otherwise unenforceable.

As plaintiffs have shown, and will show at the April 16, 2018 hearing, Defendants' new Rule 59 regime will irreparably injure the reputation and good will of the Plaintiffs' businesses once the TLC forces the Plaintiffs to provide any vehicle (*i.e.,* a WAV) other than the one, (*e.g.*, a luxury sedan) ordered by their customers.  The impossibility of complying with the July 1st deadline, will impel the TLC to impose penalties upon the Plaintiffs, including suspension and revocation of their licenses to conduct business, resulting in loss of their personal livelihoods, insolvency and bankruptcy. Moreover, the cross-dispatch provision of Defendants' new Rule 59 regime[1]   threatens the Plaintiffs' state chartered Workers' Compensation Insurance Funds for violation of the Funds' dispatch

---

[1] After Plaintiffs filed this action, the TLC uploaded to its website Memoranda of Understanding ("MOU") for a FHV dispatcher or base to participate as a volunteer in the Defendants' new "Pilot" program: Plaintiffs will hereinafter refer to Rule 59 and the Pilot program as the TLC's "new Rule 59 regime."  Copies of the MOU for the TLC's pilot program are annexed as Exhibit "B" to the Shanker Declaration accompanying this reply memorandum.

1

requirements.

In other words, through Defendants' fiat, the very exemption that Congress enacted to prevent the imposition of an unsustainable economic burden upon the FHV industry has been illegally supplanted by the TLC via its new Rule 59 regime, to be imposed on the Plaintiffs in under three months.

# POINT I

## The *PER SE* VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS, PRIVILEGES, AND IMMUNITIES

Defendants are incorrect in asserting that there is no imminent threat of irreparable harm to Plaintiffs (Ds' Mem., 3-8),[2] that Plaintiffs can only show monetary damages (*id*., 5-7), and that a balancing of the equities does not favor the Plaintiffs (*id*., 7-8).  Defendants also assert an erroneous standard as to Plaintiffs' likelihood of success on the merits (*id*., 8-10), misrepresent such likelihood (*id*., 10-13), and confound clear federalism and separation-of-powers precedents, in order to assert a disingenuous argument that sets up a contorted dichotomy between "personal" and structural" rights, that is profoundly misleading  about Plaintiffs' claims in this case (*id*., 13- 22).

Defendants' approach to Plaintiffs' instant application is to ignore Plaintiffs' central claim: Defendants' new Rule 59 regime is preempted under 42 U.S.C. §12184(b)(3) in Title III of the Americans with Disabilities Act ("ADA") and by 49 C.F.R. §37.29. Instead of addressing a textbook case of preemption, Defendants cobble together their opposition from an amalgam of inapplicable segments of the ADA: "§12101" Findings and Purpose; Title IV, Miscellaneous Provisions, "§12201" Construction; and summarily "Title II" Public Services by Public

---

[2] References to Defendants' Memorandum of Law are shown as "Ds' Mem., __."

Entities[3] in order to sidestep and mischaracterize the TLC's *per se* unconstitutional violations of Plaintiffs' federal rights.  Defendants assert that Plaintiffs raise only "structural" constitutional violations, which are insufficient to demonstrate irreparable injury.[4]  (D's Mem., 3-4).   Below, Plaintiffs distinguish not only Defendants' fallacious "structural" argument, but also distinguish the cases on which the Defendants rely, which deal *only* with Supremacy Clause violations, *i.e.*, claims that are not anchored (as here) in sufficient allegations relating to the

---

[3] It is noteworthy that Defendants' reference to Title II harkens back to their settlement in the *Noel* action, in which they agreed that 50% of the yellow cabs would be WAVs by 2020, thereby voluntarily complying with Title II. *See New York State Restaurant Ass'n v. New York City Board of Health*, 545 F.Supp.2d 363, 366 n.2 (S.D.N.Y. 2008) (citing *Reyes v. McDonald's Corp.*, 2006 WL 3253579, at *4 (N.D.Ill. Nov. 8, 2006) for the proposition that "voluntary compliance with a federal statute subjects an entity to the statute at issue).  Here, Defendants' suggestion that the Pilot is an alternative to Rule 59 is a ruse, as the Pilot may subject any signatory to "voluntarily" assume Defendants' Title II transportation obligations as a Public Entity. *See also* 49 C.F.R. §37.23 "*Service Under Contract*."  The FHV sector was not a party to *Noel*.

[4] Defendants limit this straw-man argument to the Supremacy Clause.  They never address the merits of Plaintiffs' additional Equal Protection and dormant Commerce Clause claims discussed below, and in footnote 18 of Plaintiff's moving brief (hereinafter "Ps' Mem., __.").

violation of personal or property rights.  The Plaintiffs have established violations of their personal and property rights under Title III, and also under the Equal Protection and dormant Commerce Clause, all of which are redressable by 42 U.S.C. §1983.

Plaintiffs' entitlement to the relief requested in this proceeding flows from the Supreme Court's unanimous decision in *Bond v. United States*, 564 U.S. 211 (2011), stating:[5]

> "The individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines…. The Framers concluded that allocation of powers between the National Government and the States enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived… Federalism has more than one dynamic…. [not only to] delimit the prerogatives and responsibilities of the States and the National Government vis-a-vis one another [but also to ensure that

---

[5] *Bond* involved a wife's commission of an otherwise minor crime when her best friend was impregnated by her husband.  The wife placed a substance on her friend's doorknob, causing a minor chemical burn.  The wife was prosecuted under the Chemical Weapons Convention Implementation Act pursuant to an international treaty intended for terrorists using deadly chemical weapons.  She was sentenced to six years in prison. Thus, although the Court mentions liberty, its analysis of federalism is equally applicable to any concrete, particular, and redressable injury.

the] States function as political entities in their own right.

…

Federalism also protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions…. By denying any one government complete jurisdiction over all the concerns of public life, <u>federalism protects the liberty of the individual from arbitrary power</u>. <u>When government acts in excess of its lawful powers, that liberty is at stake</u>."

*Id*. at 220-22 (citations omitted) (emphasis added).

Through Defendants' *policymaking*, which must be reserved for legislators under federalism and separation-of-powers principles[6] – the TLC has violated the Plaintiffs' personal and property rights, both state and federal.  Here, as in *Bond*, Plaintiffs can obtain redress for their injuries from this Court:

"An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws <u>causes injury that is concrete, particular, and redressable</u>. Fidelity to principles of federalism is not for the States alone to vindicate."

*Id*. at 222 (emphasis added).

By analogy, the *Bond* Court recognized the individual's interest in protecting his or her personal rights extends to the enforcement of separation-of-powers principles, stating:

---

[6] *See* 2 N.Y. Jur. 2d Administrative Law § 72 (delegation of policymaking function forbidden).

6

> "The recognition of an injured person's standing to object to a violation of a constitutional principle that allocates power within government is illustrated, in an analogous context, by cases in which individuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations. Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. Yet the dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well."

*Ibid.*

The Court concluded by explaining that "[j]ust as it is appropriate for an individual, in a proper case, to invoke separation-of-powers or checks-and-balances constraints, so too may a litigant, in a proper case, challenge a law as enacted in contravention of constitutional principles of federalism." *Id*. at 223-24.

Here, Plaintiffs are attacking the new Rule 59 regime as having been enacted in contravention of the principles of federalism and separation-of-powers, the bedrocks of our constitutional forms of government. Plaintiffs' Supremacy Clause, dormant Commerce Clause, and Equal Protection claims all challenge that new Rule 59, amended in contravention of those collective constitutional guarantees.

**A.    Defendants' Supremacy Clause Argument is Erroneous.
Plaintiffs Have Alleged the "Something More":
<u>Preemption under Title III, and a *Per Se* Constitutional Injury</u>**

As discussed below, in *Dennis v. Higgins*, 498 U.S. 439 (1991), the Supreme Court found the dormant Commerce Clause to be enforceable under 42 U.S.C.

§1983. In discussing the Supremacy Clause, the *Dennis* Court stated:

> "Respondents [the State defendants] attempt to analogize the Commerce Clause to the Supremacy Clause… which we have held does not **by itself** confer any "rights, privileges, or immunities" within the meaning of §1983.... The <u>Supremacy Clause</u>, however, is "not a source of any federal rights"; rather, it "'<u>secure[s]' federal rights by according them priority whenever they come in conflict with state law</u>."... By contrast, the Commerce Clause of its own force imposes limitations on state regulation of commerce and is the source of a right of action in those injured by regulations that exceed such limitations.

*Id.*at 450 (bold and emphasis added).

Defendants never acknowledge nor address the actual claim made by Plaintiffs: that Defendants' new Rule 59 regime is preempted because Congress explicitly excluded compulsory replacement of FHV sedans with WAVs as a means to accommodate wheelchair bound customers.  Instead, Defendants cite *American Petroleum Inst. v. Jorling*, 710 F.Supp. 421, 432 (N.D.N.Y. 1989), and *New York State Restaurant Ass'n v. New York City Board of Health*, 545 F.Supp.2d 363, 367 (S.D.N.Y. 2008) for the proposition that a violation of the Supremacy Clause, "without more," cannot serve as the basis for finding *per se* irreparable harm to the Plaintiffs.  Defendants' cases are inapposite.

In *American Petroleum*, the Court held that the "asserted violation of the Supremacy Clause cannot, 'without more,' serve as a basis for a finding of irreparable harm." *American Petroleum*, *supra*, 710 F. Supp. at 432.  The "more"

to which the Court was referring is satisfied via a showing of "some physical harm or loss of liberty… [or] some tangible harm." *Id.* at 431.  The *American Petroleum* plaintiff, however, failed to allege the civil and/or criminal penalties that New York's DEC could have imposed upon them (*id.* at 423), penalties which the Court suggested might have established irreparable harm pursuant to their Supremacy Clause claims.   The lack of such allegations proved fatal to their case.  Here, Plaintiffs predicate their claim of irreparable harm on the civil penalties that inevitably will result from Plaintiffs' inability to comply with Rule 59, including suspensions and revocations of business licenses, thereby resulting in loss of business reputation, good will and bankruptcies.  As such, Plaintiffs have alleged the additional harm – "more" – required to demonstrate *per se* irreparable injury pursuant Supremacy Clause violations.[7]

## B.   Examples of Plaintiffs' Irreparable Injuries

---

[7] No court, nor Defendant, asserts that Plaintiffs' Commerce Clause or Equal Protection claims – both enforceable under §1983 – require a showing of "something more," as is the case in a Supremacy Clause violation to demonstrate *per se* irreparable injury.  However, even if such a showing were required, Plaintiffs satisfy it.   Plaintiffs' irreparable injuries relate to their Commerce Clause and Equal Protection claims pursuant to Defendants' violations of Title III.  Those constitutional claims alone, which may be enforced under §1983, constitute *per se* irreparable injury entitling Plaintiffs to injunctive relief.

The various constitutional violations brought about by Defendants' new Rule 59 regime not only establish irreparable injury to Plaintiffs *per se*, but also threaten deprivation of Plaintiffs' personal and property rights as of July 1, 2018. In *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009), the First Circuit held that sole economic harm *may* be deemed irreparable under certain circumstances:

> "[I]t has also been recognized that some economic losses can be deemed irreparable. For instance, "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." …(citing *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932 …(1975) (finding no abuse of discretion in determination that "absent preliminary relief [movants] would suffer a substantial loss of business and perhaps even bankruptcy")); *see also Nat'l Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962) (affirming grant of preliminary injunction where denial of injunctive relief would result in the destruction of movant's business).
>
> In addition, we have held that the irreparable harm requirement may be met upon a showing that "absent a restraining order, [a party] would lose incalculable revenues and sustain harm to its goodwill."

*Id.* at 485 (citations omitted).

Courts have also held that potential bankruptcy is an irreparable injury as such damages cannot be rectified by financial compensation. *See EEOC v. Local 638, et al.,* 1995 WL 355589, *2 (S.D.N.Y June 7, 1995) (quoting *Tucker Anthony*

*Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)).[8]

Here, the threatened civil penalties imposed by Defendants' new Rule 59 regime – *i.e.,* suspension and revocation of licenses to operate FHVs – constitute irreparable injuries. Threats of such penalties constitute irreparable injury as well. *See LaForest v. Former Clean Air Holding Co*., 376 F.3d 48, 55 (2d Cir. 2004) (finding irreparable harm sufficient for a preliminary injunction from (1) substantial risk to health, (2) severe financial hardship, (3) inability to purchase life's necessities, and (4) anxiety associated with uncertainty, if substantiated by the evidence as harm.)

Additionally, federal courts have found irreparable injury in the case of: loss of business reputation, *C.D.S. Inc. v. Bradley Zetler, CDS, LLC*, 691 Fed.Appx. 33, 35 (2d Cir. 2017); loss of customer relationships for an indeterminate period, *Coastal Distribution, LLC v. Town of Babylon*, 216 Fed.Appx. 97, 100 (2d Cir. 2007); and, for situations in which enforcement actions are imminent and repetitive penalties attach to continuing violations, thereby providing no adequate remedy at law, *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992). Thus, the threatened enforcement of the new Rule 59 regime constitutes irreparable injury

---

[8] As relied on by Defendants, *EEOC* is distinguishable because it involved unions' requests for a stay after they had already been found liable for discriminatory practices against members. Having been found liable there was no likelihood of success on the merits.

faced by Plaintiffs, and entitles the Plaintiffs to a preliminary injunction.

**C.**     **Balancing of the Equities Favors Plaintiffs**

Defendants argue that Plaintiffs cost-based harms are merely "speculative," so that a balancing of the equities tips towards them because the expansion of transportation access for the handicapped community favors denying the relief sought. (Ds' Mem., 8).  This argument is erroneous.  As discussed above, Congress already weighed the equities between the handicapped and the FHV industry in enacting Title III, finding in favor of the FHV sedan sector, *i.e.* Plaintiffs. Moreover, the harm that will befall the Plaintiffs is not merely speculative.  They will be saddled with the exorbitant costs to immediately acquire over 5,000 WAVs, or in the alternative, face fines, suspensions, and revocations of their licenses for non-compliance with the new regime,[9] inevitably leading to insolvency. However, Defendants will suffer no harm by virtue of the preliminary injunction, there is no rule currently in effect so a preliminary injunction would temporarily freeze and preserve the *status quo* during litigation.

---

[9] Attached as Exhibit "B" to the Shanker Declaration is a March 30, 2018 letter from Mark Minatel, the President of TransitWorks, who opines that it would take 16-22 months to produce about 5,000 WAVs.

## Point II

## Enforcement of Plaintiffs' Other Federal Constitutional Claims under §1983

### A.    Plaintiffs' Dormant Commerce Clause Claims

Plaintiffs are entitled to injunctive relief, and to recover for injuries from state or local governments for dormant Commerce Clause violations under 42 U.S.C. §§1983, 1988.  In *Dennis*, the Supreme Court applied §1983 to dormant Commerce Clause claims flowing from principles of federalism and separation-of-powers:

> Respondents argue, as the court below held, that the Commerce Clause merely allocates power between the Federal and State Governments and does not confer "rights."… There is no doubt that the Commerce Clause is a power-allocating provision, giving Congress pre-emptive authority over the regulation of interstate commerce. It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive "restriction on permissible state regulation" of interstate commerce…. The Commerce Clause "has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." ... In addition, individuals injured by state action that violates this aspect of the Commerce Clause may sue and obtain injunctive and declaratory relief…. Indeed, the trial court in the case before us awarded petitioner such relief, and respondents do not contest that decision…. This combined restriction on state power and entitlement to relief under the Commerce Clause amounts to a "right, privilege, or immunity" under the ordinary meaning of those terms.

*Dennis*, *supra*, 498 U.S. at 447 (citations omitted, emphasis added).

13

To determine whether a federal statute confers a right within the meaning of §1983, the *Dennis* Court relied on *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103 (1989), where it set forth three considerations for determining whether a federal *statute* confers a "right" within the meaning of §1983:

> "In deciding whether a federal right has been violated, we have considered [1] whether the provision in question creates obligations binding on the governmental unit or rather 'does no more than express a congressional preference for certain kinds of treatment.' … [2] The interest the plaintiff asserts must not be 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.'… [3] We have also asked whether the provision in question was 'intend[ed] to benefit' the putative plaintiff."

*Dennis*, *supra*, at 448-49 (citations omitted).

Here, Plaintiffs satisfy these three elements. *See* P's Mem. at 16-19 concerning Plaintiffs' ability to enforce their Title III rights pursuant to §1983. Moreover, the *Dennis* Court broadly construed the "rights, privileges, or immunities" protected by §1983, making no distinction between personal liberties, personal rights, or property rights:

> "[W]e have rejected attempts to limit the types of constitutional rights that are encompassed within the phrase "rights, privileges, or immunities [in §1983]."… [W]e [have] refused to limit the phrase to "personal" rights, as opposed to "property" rights…. We further concluded that "the dichotomy between personal liberties and property rights is a false one…. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal'

14

> right, whether the 'property' in question be a welfare
> check, a home, or a savings account."

*Dennis*, *supra*, at 445-46 (citations omitted).

## B.   <u>Plaintiffs' Equal Protection Claim</u>

Plaintiffs are entitled to a preliminary injunction because their Equal Protection rights are threatened to be and will be infringed if Defendants are not enjoined. In *Vaquería*, *supra*, 587 F.3d at 468-70, the court affirmed the grant of a preliminary injunction against the Milk Industry Regulation Administration for the Commonwealth of Puerto Rico ("ORIL").  Plaintiffs, fresh milk processors in the Commonwealth, filed suit under §1983, *inter alia*, alleging that ORIL's regulatory scheme governing milk prices violated, among other things, Equal Protection and the dormant Commerce Clause, seeking to enjoin the Administrator of ORIL from continuing to implement the challenged regulatory provisions, which allegedly favored a non-party competing milk processor.

The First Circuit ruled that the preliminary injunction did not impermissibly change the status quo between the parties.   Notably, the Court rejected "defendant's baffling assertion that the relief 'forever changed the status quo,' [whereas] the aim of the order was to establish parity among the [parties] pending outcome of the litigation." *Id*. at 487.  Such is the case here.  In *Vaquería*, the likelihood of success was apparent because the industry was beholden to the whims of the administrator, made possible by the lack of operating standards. *Id*. at

483.   The First Circuit also adopted the lower court's finding with respect to irreparable harm, noting that they are weighed in tandem on a sliding scale. *Id.* at 485. Moreover, when balancing the equities, the Court found it was "not close," as plaintiffs were <u>facing insolvency</u>. *Id*. at 486 (emphasis added).

## POINT III

### Plaintiffs' Rights under Federalism and Separation-of-Powers Have Been <u>Adequately Pleaded</u>

Defendants incorrectly argue that Plaintiffs fail to assert a federal separation-of-powers claim. (Ds' Mem., 13).   Defendants have violated principles of federalism and separation-of-powers, both state and federal, by their direct policymaking that is reserved, under those principles, to Congress or state or city legislatures.[10]   The enactment of the new Rule 59 regime violates principles of federalism and separation-of-powers – bedrocks of our forms of government. Plaintiffs have adequately asserted these rights in seeking redress of their personal and property rights, privileges, and immunities. See, *supra*, Points I and IA.

Plaintiffs seek injunctive relief from a local regulation, on the ground that that regulation is preempted by a federal statute which, by virtue of the Supremacy Clause, must prevail. This presents a federal question that this Court has original jurisdiction to resolve. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14 (1983);

---

[10] *See* 2 N.Y. Jur. 2d Administrative Law § 72. (delegation of policymaking function forbidden).

*Hillsborough County v. Automated Lab., Inc.,* 471 U.S. 707 (1985) (under Supremacy Clause constitutionality of local ordinances is analyzed in the same way as state laws).  The existence (or not) of an implied private right of action, or a viable § 1983 claim, under the pre-empting federal statute is inapposite to whether the Court may exercise jurisdiction. *Western Air Lines v. Port Authority of N.Y. and N J.,* 817 F.2d 222, 225 (2d Cir.1987) (holding that "A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law."), *cert. denied,* 485 U.S. 1006 (1988); *AT & T Commc'ns of the Sw., Inc. v. City of Austin, Tex.*, 975 F. Supp. 928, 936–37 (W.D. Tex. 1997) (holding that the court had jurisdiction to determine that federal act preempted city ordinance even absent other federal claims), *vacated as moot* [11] 235 F.3d 241 (5th Cir. 2000).

Plaintiffs' federal preemption claim, augmenting its §1983 claim, affords more than ample reason to exercise supplemental jurisdiction under 28 U.S.C. §1367 and to provide the injunctive relief requested, irrespective of whether Defendants' constitutional violations are state, federal, or both.

Accordingly, the TLC's citation to *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681 (2d Cir. 1996) is both baffling and sardonic.  Baffling, because the *Richmond* court never spoke in terms of "dismissible" claims in the

---

[11] The city's ordinance was repealed by the state legislature while the appeal was pending. *Id.*

contingent voice used by the TLC (all of the plaintiff's federal claims had, in fact, been dismissed when Judge Ragi turned to consider the remaining state law preemption claim, *id*. at 689, a claim not asserted here.  Sardonic, because the Circuit Court took care to distinguish its Due Process jurisprudence, by indicating that one circumstance in which a general class of persons can successfully challenge a legislative act on procedural Due Process grounds is where, as here, those persons have been deprived of the legislative process itself. *Ibidem*, (*citing* 2 Rotunda & Nowak, *Treatise on Constitutional Law* § 17.8[(c), n. 7.10] (2d ed. 1992)).  The deprivation of that fundamental right – to have elected representatives make the legislative policy choices that delimit one's personal right to make a living – is essential to, and identical in, both the State and Federal Constitutions.  It is settled law in the Second Circuit that irreparable injury is presumed where, as here, constitutional rights have been violated. 3 N.Y. Prac., Com. Litig. in New York State Courts § 18:9 (4th ed.).  Accordingly, this Court should find that Plaintiffs have demonstrated a likelihood of success on the merits and enter the preliminary injunction requested.

## A.    Plaintiffs' State Law Claims Are Likely To Succeed

For clarification, Plaintiffs did not assert that the Board of Estimate created the TLC. *Cf.* Ps' Mem., 15. The TLC was created at a time (1971) when the City's

legislature was unconstitutionally weak, and its delegation to the TLC was impermissibly broad. (D's Mem., 21.)

## B.    <u>Unconstitutionality of Defendants' New Rule Regime</u>

What Plaintiffs have alleged in the alternative, and have demonstrated throughout their pleadings (Ps' Mem., 20-25), is that Plaintiffs have the right under both constitutions to challenge impermissible delegation to, or usurpation of, policymaking authority by an agency of the executive branch.[12]   Policymaking under federalism and separation-of-powers is reserved to the legislative branch.

It follows that cases cited by the Defendants for the proposition that "courts have repeatedly upheld <u>rules</u> promulgated by TLC that pertain to the regulations and supervision of the business of transportation for hire in the City" would be upheld. (Ds' Mem., 14-16). Agencies are permitted to make rules; but not policy. Moreover, in opposition, Defendants failed to offer any documents to support an assertion that the TLC amended Rule 59 pursuant to any legislative policy determination. The <u>bills</u> offered by Plaintiffs conclusively prove that neither the State legislature, nor the City Council, have made a policy decision concerning WAVs. (See Ps' Mem. Appendix D; Complaint Exhibit 7). By contrast, Plaintiffs will prove, based on the Title III statute, that Congress, did make a legislative

---

[12] *See* 2 N.Y. Jur. 2d Administrative Law § 72 (delegation of policymaking function forbidden).

policy decision directly, but that it is unlawfully confuted by the TLC's new Rule 59 regime.

## C.   Defendants Fail the *Boreali* Coalescing Circumstances[13]

The first consideration, making value judgments of policy goals to resolve social problems, is precisely what Defendants concede they did. (Ds' Mem., 16-19).  Overlooking the fact that neither the New York Legislature, nor the City Council, have articulated a public policy pursuant to which the TLC could make such rules, as well as Congress' enacting a contrary rule, the Defendants also concede that Rule 59 "provides wheel-chair using customers with additional options for obtaining additional rides … within TLC's broad mandate to decide that additional accessible FHV service is needed to service the public and to determine how to fund those costs." (Ds' Mem., 18).  Moreover, in concluding their opposition point, Defendants concede "the FHV Accessibility Rule is based on … considerations of how to best attain increased accessibility options for FHV riders in a way that can be appropriately administered." (Ds' Mem. at 19).  Defendants cite no legislative enactment for their decision that additional FHV service should be provided, or how best to attain increased accessibility options, or

---

[13] Plaintiffs do not contend that the Boreali "coalescing circumstances" are fixed factors. *Boreali v. Axelrod*, 71 N.Y.2d 1 (1987). Moreover, Defendants do not suggest any viable alternatives to judge their conduct.

who should pay for it.  In fact, Congress made a decision that the FHV sector could continue sedan service without obtaining WAVs.

Second, Defendants contend the TLC did not write on a "clean slate" because its rule "is in line with <u>the adoption of prior rules TLC has issued</u> <u>governing both</u> medallion taxis and FHV sectors." (Ds' Mem., 19, emphasis added).  The second *Boreali* consideration requires extant legislative action for rulemaking, not a history of earlier agency rulemaking on other topics as Defendants posit. (Ds' Mem., 19-20).  Again, Defendants' do not identify any legislation that permitted their new Rule 59 regime directly on the topic of WAVs. However, Plaintiffs have pointed to Congress's enactment of Title III that directly contradicts Defendants' new regime, a contradiction left unaddressed by Defendants.

Third, Defendants absurdly suggest that the Title III exemption is not a "coalescing circumstance" under *Boreali*. (Ds' Mem., 20).  Federalism, separation-of-powers principles, and the Supremacy Clause disagree. Moreover, the third consideration is whether the New York legislatures have <u>not</u> come to an agreement, but are in the process of acting, which indicates the matter is "a policy consideration for the elected body to resolve." *See Matter of NYC C.L.A.S.H. v. N.Y. Office of Parks*, 27 N.Y.3d 174, 184 (2016).  Furthermore, it is not the number of bills that matter – the fact of action is sufficient – but also the dates of the State

Legislature's actions demonstrate that the legislators were considering what the public policy should be, at the same time the TLC issued its own *diktat* without legislative guidance, save violating ADA Title III. (See Ps' Mem. Appendix D; Complaint Exhibit 7).

Finally, Defendants confound Plaintiffs' simple identification of the "field" where an agency's special expertise or competence is required: the special expertise or competence to promulgate WAV obligations in Rule 59. (Ds' Mem., 21-22).    The only expertise or competence Defendants identified is the commissioners' political appointments by the Mayor to a facially unconstitutional commission. The TLC offered no scientific analysis or statistical study to justify this new Rule 59 regime.  Rather, Defendants baldly command the FHV sector to dispatch an arbitrary number of WAVs.  The TLC offered no documentation concerning where sufficient WAVs could be acquired, or how an owner/operator would pay for a WAV.  The Defendants suggest that Plaintiffs pay for WAVs, if available, by raising their rates in their filed rate card (Ds' Mem., 19), clearly placing Plaintiffs at a competitive disadvantage vis-à-vis yellow and green cabs, whose WAVs are subsidized by the TLC. Again, Defendants identified no legislative enactment by which the TLC was authorized to promulgate a Rule. Instead, Defendants simply assume that the Rule was "undoubtedly the product of the TLC's 'special expertise' and 'technical competence'" (Ds' Mem., 22), without

22

any other showing. In other words, the TLC and Defendants relied solely on their own expertise and competence to supersede Congress' policy decision.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted, together with such other and further relief as this Court may deems just, proper, and equitable.

Dated: New York, New York
     April 4, 2018

                    Respectfully submitted,

          McElroy, Deutsch, Mulvaney & Carpenter, LLP
                  *Attorneys for Plaintiffs*

              *Richard S. Mills*

            _____

              Richard S. Mills, Esq.
              Steven J. Shanker, Esq.
              Dennis O'Neil Cowling

## <u>CERTIFICATION</u>

I hereby certify that in accordance with Rule 2(D) of the Individual Rules of Practice of Judge John G. Koeltl, this memorandum of law contains 4,990 words and that this memorandum of law complies with the formatting requirements set forth in Rule 2(D).

Dated:   New York, New York
       April 4, 2018

DENNIS O'NEIL COWLING